# Richmond

BITUMINOUS CASUALTY CORPORATION v. DENVER BALDWIN AND ALFRED A. SHRADER, MILBURN WHITT AND WILLIAM C. JOHNSON, PARTNERS TRADING AS SHRADER-WHITT COAL COMPANY.

April 25, 1955.

Record No. 4370.

Present, All the Justices.

The opinion states the case.

*Hunter & Fox* and *H. C. Johnson*, for the appellant.

*Harman & Harman* and *Tivis D. Owens*, for the appellees.

EGGLESTON, J., delivered the opinion of the court.

On May 22, 1952, Denver Baldwin, an employee of Alfred A. Shrader, Milburn Whitt and William C. Johnson, partners trading as Shrader-Whitt Coal Company, was injured in an industrial accident and filed a claim for compensation against his employers and Bituminous Casualty Corporation. There was no dispute as to claimant's right to compensation and the only issue before the Industrial Commission was whether the Casualty Corporation had been bound through its local agent to cover the risk. Nickels, the hearing commissioner, held that the insurance company was not bound. Upon a review the full Commission, with Nickels dissenting, held that the insurance company was bound and to review the award to that effect the present appeal was allowed.

In the latter part of April, 1952, the partners leased from Jewell Ridge Coal Company a coal mine in Buchanan county, Virginia, which had previously been operated by Robert A. Stallard. During his operation Stallard had carried with the Bituminous Casualty Corporation a workmen's compensation policy which he had procured through J. C. Montgomery Insurance Corporation, its local agent at Richlands, Virginia.

On April 28 the three partners went to the office of Montgomery Insurance Corporation and explained to its manager, Henry H. Elswick, that they had leased the Stallard mine which they proposed to operate as a partnership under the firm name of Shrader-Whitt Coal Company, and that they desired a workmen's compensation policy. They knew that Stallard, while operating the mine, had carried such a policy with Bituminous Casualty Corporation.

Shrader testified that Elswick told the partners that if they made a deposit with him of $150 on account of the premium on the policy they could begin the operation of the mine "that day or the next," and that they would be "protected under the policy." He told them, however, that the policy would be written by the Louisville, Kentucky, office of the Casualty Corporation. The required sum was

paid and Elswick gave them a receipt which read: "Received of Shrader & Whitt Coal Co. One hundred fifty and 0/100 Dollars for deposit premium workmen's compensation." Elswick gave them "a time book" in which was "a set of accident forms." The partners were not required to file a written application for the policy. The other two partners, Whitt and Johnson, testified to the same effect.

Elswick denied that he told the partners that they could begin the operation of the mine immediately and that they would be covered by insurance. According to his version, "I told them that ordinarily it would be covered—they at first insisted for me to say that they would be covered and I told them ordinarily that it would be covered the day after I wrote the company since they had had Mr. Stallard insured."

Relying on these statements of Elswick, the partners began their operation of the mine on the following day, April 29, and continued such operation through May 23, when they were notified that the insurance company had declined to assume coverage of the risk.

On April 28, the day of his interview with the partners, Elswick wrote the Louisville office of the Casualty Corporation:

"You will please issue Workmen's Compensation Policy for the above applicants who bought mine formerly covered under Policy #WC-208664—Robert A. Stallard.

"We are, this date, mailing Mr. Stallard's policy to you for cancellation."

In reply to this letter the Louisville office wrote Elswick on May 5:

"In the absence of an application for coverage accompanying your letter of April 28th I take it that you want us to issue a policy showing the exact location as indicated under policy WC208664 Robert A. Stallard, which has been cancelled effective April 21st.

"Since you failed to submit an application and your letter fails to give an effective date of coverage for Shrader &

Whitt Coal Company, and the further fact that you furnished Mr. Frost copy of your letter, I assume that you felt an inspection should be made before issuing a policy.

"In view of Mr. Frost's report on Robert A. Stallard dated December 26th we think an inspection should be made before coverage is issued because Mr. Stallard was doing nothing but pillar work and employing only two men at the time.

"I am furnishing copy of this letter to Alex suggesting that he furnish us copy of his report of inspection as soon as it has been made."

The "Mr. Frost" mentioned in this letter is Alex Frost, a mine inspector for the Casualty Corporation.

On May 7 Elswick wrote the Louisville office:

"In reply to your letter of the 5th, it is true that the above applicants are operating at the exact location as indicated under Policy #WC-208664—Robert A. Stallard.

"It is also true that we failed to submit an application and failed to state in our letter that we wanted the policy for Shrader and Whitt Coal Company issued date of cancellation of Mr. Stallard's policy."

On May 13 Elswick advised his principal that William C. Johnson, whose name had not been mentioned in the previous correspondence as a partner, was "a third partner in this operation." The letter concluded: "We will appreciate your endorsing the policy to cover same." Evidently Elswick thought that a policy had been written to cover the risk as he had directed.

Under date of May 12 Frost, the inspector, wrote his principal of an inspection of the mine which he had made on May 5. This report pointed out that certain incidents in the operation of the mine were "substandard" and recommended certain "improvements" which "should be made to remove the hazards to promote safe and efficient operation." This report clearly indicated that the mine was in operation.

On May 19 the Louisville office wrote Elswick that upon consideration of Frost's report it had decided that the opera-

tion of the mine was "an uninsurable risk and we are in no position to provide the coverage."

On May 22 Elswick wrote the operators that the insurance company had declined to accept the risk and that the amount of the premium deposit was being refunded. This letter was not received by the operators until May 23, the day after the claimant, Baldwin, had been injured under circumstances which entitled him to compensation.

There is ample evidence to support the finding of the majority of the Commission that Elswick, the local agent of the insurance company, and the operating partners understood and agreed that there was a temporary coverage of the risk pending the issuance of the formal policy. This finding has, of course, settled the conflict of evidence in favor of the employers. It is thus settled, as Shrader testified, that Elswick told the partners on April 28 that they could begin their operation forthwith and that they would be "protected under the policy" which was to be issued by the Louisville office. The required premium was paid and in reliance upon the statement of the local agent the operation of the mine was begun. Elswick's letters to the insurance company showed that he expected that the policy would be issued, as a matter of course, to cover the operation by the partnership, effective on the date of cancellation of the Stallard policy.

Elswick admitted that he knew that the partners had begun the operation of the mine pursuant to his interview with them on April 28. As has been said, through the inspector's report of May 12, commenting on certain methods of operation which should be corrected, the insurance company had actual knowledge that the mine was being operated. Yet neither Elswick nor his principal indicated to the operators that the risk was not covered. The operators were entirely unaware of the correspondence which had passed between Elswick and the Louisville office of the insurance company.

Indeed, the only communication which the operators received from the insurance company was a copy of its "Mine

Safety Regulations," mailed on May 12, specifying certain measures which should be put into effect and maintained in order that the operators might qualify for workmen's compensation insurance with that company. The concluding paragraph in this communication read: "Where binder or policy is issued prior to inspection the mine will be inspected within ten to thirty days and continuance of coverage will depend upon the progress made by the management toward the compliance with these standard recommendations." This was a clear indication to the operators that temporary insurance coverage was in effect pending an inspection report.

Oral "binders" or contracts for temporary insurance pending an investigation of the risk by the insurer, or until the issuance of a formal policy, are quite common in the insurance business. Such contracts, when entered into by general agents, or by duly authorized agents acting in such respect within the apparent or ostensible scope of their authority, are binding on the insurance company which they represent. *Peoples Life Ins. Co.* v. *Parker,* 179 Va. 662, 666, 667, 20 S. E. (2d) 485, 486; 29 Am. Jur., Insurance, § 135, p. 151.

While Elswick testified that he had authority to issue temporary binders on fire and automobile insurance, but not on workmen's compensation insurance, there is no evidence that the partners had knowledge of such limitation on his authority. It is true that Elswick told the partners that the formal policy would be written by the Louisville office, but he did not say or suggest that he lacked the authority to bind his principal for temporary insurance pending the issuance of the policy. It is well settled that limitations on the authority of an agent acting within his apparent authority do not affect an applicant for insurance who has no knowledge of such limitations. As was pointed out in *Virginia Auto Mut. Ins. Co.* v. *Brillhart,* 187 Va. 336, 345, 46 S. E. (2d) 377, 381 (quoting from earlier cases), " ' "The powers of the agent are, prima facie, coextensive with the business intrusted to his care, and will not be narrowed by limitations

not communicated to the person with whom he deals. * * * " ' " See also, 29 Am. Jur., Insurance, § 95, pp. 117, 118.

We agree with the Commission that under the detailed circumstances the Casualty Corporation is bound for the coverage for this claim. Accordingly, the award is

*Affirmed.*