**PROGRESSIVE ENTERPRISES, INC., Appellant,**

v.

**NEW ENGLAND MUTUAL LIFE IN-SURANCE COMPANY, Appellee.**

No. 75–1289.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 10, 1975.

Decided May 12, 1976.

Certiorari Denied Oct. 18, 1976.

See 97 S.Ct. 261.

---

Alvin B. Fox, Newport News, Va. (Ellenson, Fox & Wittan, Newport News, Va., on brief) for appellant.

A. C. Epps, Richmond, Va. (James W. Tredway, III, Christian, Barton, Epps, Brent & Chappell, Richmond, Va., on brief) for appellee.

Before HAYNSWORTH, Chief Judge, RUSSELL and WIDENER, Circuit Judges.

RUSSELL, Circuit Judge.

This is a suit on a life insurance policy. The policy contained a provision barring recovery, except for return of premiums paid, if the insured committed suicide "within two years from the date of issue of this Policy." The insured admittedly committed suicide. The District Court held that such suicide occurred within the two-year period "from date of issue" and granted judgment for the insurance company. The plaintiff has appealed. We affirm.

The pertinent facts are not in any substantial dispute. The insured Ralph N. Wood, Sr. applied for a policy of ordinary life insurance on April 9, 1971. The application provided that "[I]f a conditional receipt amount is paid with this Application, in accordance with Item 28 above, the insurance policy shall take effect as stipulated in the Conditional Receipt." Item 28 of the Application required the payment of "$15.00 or one month's premium, whichever is larger." The agent of the insurance company issued a Conditional Receipt in the amount of $362.77 on April 16, 1971. The Conditional Receipt contained these provisions:

A. *Underwriting Date.* The "Underwriting Date" shall be the latest of the dates of Parts I and II of the Application and the Report of the Medical Examiner.

\* \* \* \* \* \*

C. *If Policy Can Be Issued as Applied For.* If the underwriting rules of the Company permit a policy to be issued for the plan of insurance, amount, additional benefits and rate classification applied for, it shall become effective as of the Underwriting Date.

D. *If Policy Can Be Issued, But Not as Applied For.* If the underwriting rules of the Company prevent issuance of a policy exactly as applied for, but permit issuance on some basis, then the policy with the necessary changes (called the issuable policy) shall become effective as of the Underwriting date, but only if (1) *within 60 days after the Underwriting Date the applicant accepts any necessary amendment to the Application and pays any amount necessary to complete payment of at least one month's premium for the issuable policy* and (2) at the time of such acceptance and payment the proposed insured is living and there has been no change in his insurability since the Underwriting Date. \* \*

(Emphasis added in body)

\* \* \* \* \* \*

H. *General.* No insurance shall become effective except as provided in this Receipt. \* \* \*

The health of Wood did not warrant the issuance of a policy, with rate classification, as applied for. The insurance company did, however, conduct a number of additional medical examinations in order to determine whether it could issue him a different policy. It was not until about the middle of July, 1971 that the company offered the assured a special class, Table H, rated policy.[1] The policy, as offered, was accepted and the plaintiff on July 15, 1971 paid the first annual premium, less a credit for the amount paid at the time of the issuance of the conditional receipt. The parties agree,

---

1. The difference in the policy applied for and the one finally offered to and accepted by the assured is strikingly illustrated by the monthly premiums payable under the two policies. The monthly premium under the policy applied for was $362.77, under the policy issued the monthly premium was $510.35.

however, that the date of the policy, for premium purposes, should be May 28, 1971, and this is the date shown on the policy as issued. The assured committed suicide on May 5, 1973. The beneficiary filed proof of loss under the policy and demanded payment. The insurance company denied liability and this suit followed.

The critical issue, on which the rights of the parties turn, is the time when the period fixed in the suicide clause commenced.[2] There are three possible dates for the commencement of the period provided in the suicide clause: 1. The date of the policy itself, i. e., May 28, 1971; 2. The date of the Conditional Receipt, i. e., April 16, 1971; and 3. The date when the policy was actually issued, i. e., July 23, 1971. There are authorities which, based on the facts of the individual case, support each of these possibilities.[3] The plaintiff at the outset, adopted as "date of issue" under the suicide clause here the formal date in the policy itself. It was readily obvious, however, that the only date that would take the case out of the bar of the suicide clause was that of the Conditional Receipt; either of the other possibilities would bring the suicide within two years from "date of issue" as fixed in the suicide clause and would bar recovery under the policy's suicide clause.

Under these circumstances, the plaintiff has accordingly argued for the date of the Conditional Receipt for the commencement of the time period fixed by the suicide exclusion. The basis for this contention may be quickly stated. The application for insurance, as executed on April 9, 1971, contained the statement that, upon payment of the sum specified in Item 28 thereof, the insurance applied for "shall take effect as stipulated in the Conditional Receipt." While the assured himself did not make the payment as provided in Item 28, the soliciting agent of the Company, without the knowledge of the assured, did and the plaintiff contends that this was sufficient under the terms of the application to make the policy "take effect as stipulated in the Conditional Receipt." And the plaintiff asserts that "date of issue" in the suicide clause should be construed as meaning the effective date of the policy as fixed in the Conditional Receipt. Under the reasoning, the commencement date for the suicide provision would be April 16, 1971, and suicide of the assured would have occurred beyond the two-year period as fixed therein. Whether this argument is tenable depends on a fair construction of the Conditional Receipt itself, since the application provides that the effective date referred to therein shall be "as stipulated in the Conditional Receipt."

The Conditional Receipt states that if the policy "as applied for" is issued, it shall "become effective as of the Underwriting Date,"[4] or if the policy as applied for may not be issued, but one may be issued "on some basis," then the issuable policy "shall become effective as of the Underwriting Date" if "within 60 days af-

2. The suicide exclusion provision is as follows:
   If the Insured, whether sane or insane, shall commit suicide within two years from the date of issue of this Policy, the liability of the Company under this Policy shall be limited to the payment in one sum of the amount of premiums paid, less any indebtedness to the Company.

3. As stated, the authorities are not uniform. Some cases construe the date of the policy itself (Lloyd v. Franklin Life Insurance Company (9th Cir. 1957) 245 F.2d 896, 899; State Mut. Life Assur. Co. v. Stapp (7th Cir. 1934) 72 F.2d 142, 145–6; Harrington v. Mutual Life Ins. Co. (1911) 21 N.D. 447, 131 N.W. 246, 249); others the actual date of issuance irrespective of the date set forth in the policy itself (Davis v. Fidelity Mut. Life Ins. Co. (4th Cir. 1939) 107 F.2d 150, 151; New York Life Insurance Company v. Noonan (9th Cir. 1954) 215 F.2d 905, 906, cert. denied 348 U.S. 928, 75 S.Ct. 341, 99 L.Ed. 727; Crowley v. Travelers Ins. Co. (5th Cir. 1952) 196 F.2d 315, 316); and finally a number look to the date of the application or conditional receipt, (American National Insurance Co. v. Motta (5th Cir. 1968) 404 F.2d 167). It is fair to say, however, that the difference in result among the cases arises largely out of a difference in the facts of the respective cases.

4. The Underwriting Date is defined in the Conditional Receipt to be "the latest of the dates of Parts I and II of the Application and the Report of the Medical Examiner," which in this case would have been April 16, 1971.

ter the Underwriting Date the applicant accepts any necessary amendment to the Application and pays any amount necessary to complete payment of at least one month's premium for the issuable policy * * *." Concededly, the Company did not issue a policy "as applied for." The policy it issued was on a different "basis," with different "benefits and rate classification." And the policy as issued by the Company was not accepted by the assured nor was the first month's premium on the issued policy paid "within 60 days after the Underwriting Date." It is plain, then, that the policy as issued on July 23, 1971 did not "become effective" under the Conditional Receipt on "the latest of the dates of Parts I and II of the Application and the Report of the Medical Examiner," and the "date of issue," as used in the suicide exclusion provision, must be assumed to be either the actual date of issue of the policy or its formal date. In either event, the plaintiff would be barred from recovery by the suicide exclusion provision.

This case is easily distinguishable from *Motta*,[5] the authority on which plaintiff primarily relies. In that case, the policy "as applied for" was issued "within 60 days" from the date of the Conditional Receipt. By the express language, this made "the effective date" of the policy that of the "Underwriting Date." But that is not this case. The policy issued here was, to repeat, not the policy "as applied for." It was an entirely different policy—and it was not offered to the applicant or issued by the Company within 60 days after the application. It is easy enough to identify a policy with an application where the policy issued is precisely the policy "applied for;" the application and the policy do not so easily merge into a single contract when the policy issued is completely different from that "applied for."

▬▬ The plaintiff seeks to overcome the consequences of Section D of the Conditional Receipt with the claim that the Insurance Company, by failing to return the premium paid at the time of the issuance of the Conditional Receipt, is foreclosed from asserting ineffectiveness of the policy as of the "Underwriting Date" as defined in the Conditional Receipt. It cites as authority for this position *Smith v. Westland Life Ins. Co.* (1974) 41 Cal.App.3d 97, 115 Cal.Rptr. 750. The reasoning of that case has much to recommend it. But this is a diversity case, controlled by Virginia law; and the law of Virginia is contrarywise to the position of the plaintiff and the conclusion of the California Court. *Hayes v. Durham Life Insurance Company* (1957) 198 Va. 670, 96 S.E.2d 109, 112. We have heretofore had occasion to consider *Hayes* in this connection; and, while we have expressed some reservations on its reasoning, we have recognized that it is binding upon us in a diversity case arising in Virginia such as here. *Justice v. Prudential Insurance Company of America* (4th Cir. 1965) 351 F.2d 462, 463. In that case, we said:

> * * * Subsequent cases may afford Virginia the opportunity to limit *Hayes* to its facts in view of the growing recognition of the public interest involved in requiring insurance companies to act promptly when they hold an applicant's premium in order not to mislead him to his detriment into believing that he is covered, but such a decision in view of the very broad and sweeping dicta of the *Hayes* case should come from Virginia's courts. We therefore conclude with the district court that the *Hayes* case is controlling and fatal to the plaintiff's cause in this action."

Accordingly, the judgment of the District Court is affirmed.

*AFFIRMED.*

WIDENER, Circuit Judge (dissenting):

I respectfully dissent.

I first note that the opinion, on page 1058, indicates that "[t]he insured Ralph N. Wood, Sr. applied for a policy of ordinary life insurance on April 9, 1971," and it appears from the record that the application was made by the appellant, Progressive En-

---

**5.** *American National Ins. Co. v. Motta* (5th Cir. 1968) 404 F.2d 167.

terprises, being signed by Clarence Wood on behalf of the plaintiff as applicant, and by Ralph Norris Wood, Sr., as the proposed insured.

I further note that the opinion, again on page 1058, recites that "[t]he agent for the insurance company issued a Conditional Receipt in the amount of $362.77 on April 16, 1971." The opinion then goes on to set out the provisions contained in the receipt. I think it is significant, however, that neither Progressive nor Wood ever received the conditional receipt and were thus not made aware of the fact that the binder expired by the terms of the conditional receipt at the expiration of sixty days from April 16th. These facts are undisputed.

This then brings me to the testimony from which it must necessarily be inferred that not only was the conditional receipt withheld from Progressive, but also the fact that the coverage had lapsed after sixty days was concealed from Wood and Progressive by New England Life's agent, Watson. I specifically refer to Watson's testimony beginning on page a80 of the appendix.

"Q. All right. And would you have brought that to their attention?

A. I don't know, sir. In a case like this—maybe I'll reveal more here about myself than I care to, in a way—in a case like this it is a rather delicate thing, you have a lot of premium dollars you're talking about.

It is difficult for a lot of people to understand the rating. There are a lot of variables here.

If the time is expired, and if you know the applicant—I have already said that Mr. Wood was doing as much as he could to get his requirements fulfilled—I don't see that there is much point served by telling the individual that he no longer has insurance under the conditional receipt."

Moreover, it appears that Watson also withheld from Progressive the fact that an extension of the conditional coverage could

have been routinely obtained, and that Watson himself made timely payment of the premium demanded by his own company well within 60 days after the date of the conditional receipt. No further demand for payment of any premium was made until after the negotiations concerning Wood's health were completed, the reason obviously being that the insurance company was afraid it would lose the business if it disclosed the true facts to Wood and Progressive.

But this is not all. The foregoing irregularities were compounded by the company's conscious and deliberate violation of another section of the Conditional Receipt not referred to in the opinion of the court. Section G thereof provides in part:

"G. *Refund and Cancellation of Receipt.* The Company will refund the amount of this Receipt

\* \* \* \* \* \*

(upon certain conditions not mentioned here because the company admits and relies on the fact that the coverage and temporary receipt lapsed on June 16, 1971).

Despite the clear language of the receipt as to refund, and the asserted lapse of coverage on June 16, 1971 (indeed, this is the essence of the entire defense of this claim), the company, in writing, not through inadvertence but by design, has shown its intent to keep the true facts from the insured. This calculated act with its obvious intent to lull Wood into a false sense of security is exposed by an internal memo sent by the home office of the company to its Richmond office. The memo also makes clear that the company was with the agent in the plan, part and parcel, and is here copied:

"The Conditional Receipt period has expired, and there is no longer any insurance coverage under the Conditional Receipt. *It is not necessary to make any refund at this time, unless the applicant requests it.* We will continue underwriting, although on a nonprepaid basis. If we decline, or if the applicant refuses the

offered policy, the prepayment must be returned in full." (Emphasis added).

Thus, it appears to me that New England Life, after having extended temporary coverage to Progressive on the life of Wood, failed to inform Progressive of the terms of that coverage, failed to notify it when the coverage lapsed, failed to indicate that if Progressive so desired, it could seek an extension of that temporary coverage which would be granted routinely, and in all events accepted the payment from its own agent which it did not refund in violation of the terms of the receipt itself. I would further point out that in Virginia the agent of an insurance company is the insurance company. What he does, it does. What he knows, it knows. So all the acts both of Watson and his insurance company are attributable in law to the company. See *Boykin & Tayloe v. Columbia Fire Ins. Co.*, 90 F.Supp. 647, 650 (E.D.Va.1950); Va.Code § 38.1–292.[1]

Thus, it would seem to me that New England Life, having failed to inform Progressive of the conditional nature of the insurance coverage extended under the conditional receipt, or, indeed, of any other fact it had a right to know, should not be allowed to assert successfully a lapse in that coverage at this time. Certainly, New England Life should have given Progressive a copy of the conditional receipt and informed it of the fact that coverage lapsed sixty days thereafter. Certainly it should have refunded the premium obtained. Failing in this, should it now be permitted to rely upon that lapse in coverage to deny Progressive's claim? I think not.

I, of course, recognize the problems presented by the Virginia Supreme Court's decision in *Hayes v. Insurance Co.*, 198 Va. 670, 96 S.E.2d 109 (1957). There, however, the question was whether any coverage had ever existed. Here, there is no question but that there was a conditional policy in force following the insurance application. The issue is whether New England Life may assert the lapse of that coverage in light of its agent's actions which must be imputed to it, as well as its own actions, and I am convinced that we are not bound by the *Hayes* decision. In this conclusion, I am reinforced by the fact that the Virginia court, in *Hayes*, took pains to point out a pertinent fact, and the one that should require our case to be distinguished: "The defendant company [in *Hayes*], moreover, did not issue or authorize to be issued interim or 'binding' insurance, that is, insurance effective from the date of the application and payment of the premium for a policy." 198 Va. at 672, 96 S.E.2d at 111. Such interim insurance was admittedly issued here. That is very nearly all this case is concerned with.

In Virginia, even oral binders or contracts for temporary insurance are enforced. *Bituminous Casualty Corp. v. Baldwin*, 196 Va. 1020, 86 S.E.2d 836 (1955). No reason exists not to enforce a written agreement of like tenor when the company has deliberately misled the insured as to its effectiveness and retained the premium paid, and in the face of the finding by the district judge that ". . . the only notice that Progressive . . . had that there was a binder of insurance was oral notice from the special agent to Progressive . . . that the policy of insurance was bound."

---

1. Whether Watson was a special agent with limited authority, or a general agent, is of no moment here. The company does not deny Watson's authority to issue the conditional receipt, and his failure to deliver it is, therefore, chargeable to the company. Having failed to provide the insured with such a receipt, the company should not be permitted to rely upon limitations contained in the receipt to defeat coverage. Its claim that Watson failed to notify Progressive of the termination of coverage at the expiration of the sixty day period is not material, I think is not even a colorable defense.