# Wytheville

PEOPLES LIFE INSURANCE COMPANY v. GRACE PARKER.

June 8, 1942.

Record No. 2543.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*Rixey & Rixey*, for the plaintiff in error.

*Richard B. Kellam* and *F. E. Kellam*, for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

This action was brought by Grace Parker against the Peoples Life Insurance Company on an alleged oral contract of life insurance. The Company filed a plea of the general issue and a tender of the return of a premium paid to it. From the judgment of the trial court, approving a verdict for the plaintiff in the sum of $1,000, the Company appeals.

The record discloses the following facts and circumstances:

C. L. Sowell, a representative of the Peoples Life Insurance Company, hereinafter referred to as the Company, called at the home of Gordon Parker, on January 7, 1941, for the purpose of interesting Parker in taking out some insurance on his life. Parker did not seem to be especially interested, but his wife, Grace Parker, was. Upon the urging of the agent and Mrs. Parker, Parker agreed to apply for a policy of industrial insurance in the sum of $500 with double indemnity in case of accidental death.

Grace Parker and two other witnesses said that Sowell told Parker if he would pay a month's premium in advance, amounting to $2.17, the insurance would be in immediate benefit and effect. Sowell told him that he would have to sign an application and handed him the application form used by his Company. Thereupon Parker took the application and signed it; but being in a hurry to leave, told the agent to let his wife answer the several questions relative to the applicant's age, health, etc., as she knew as much about them as he did. The application signed by Parker contained the following printed language:

"I HEREBY APPLY for insurance for the amount herein named, and I declare and warrant that the answers to the foregoing and following questions are complete and true, and were written opposite the respective questions by me, or strictly in accordance with my directions. I agree that said answers, with this declaration, shall form the basis of a contract of insurance between me and PEOPLES LIFE INSURANCE COMPANY, and that the policy which may be granted by the Company in pursuance of this application shall be accepted subject to the conditions and agreements contained in such policy. *I further agree that no obligation shall exist against said Company on account of this application, although I may have paid premiums thereon, unless said Company shall issue a policy in pursuance thereof, and the same is delivered to me.*" (Italics supplied.)

The agent was paid the $2.17, and he made out and gave to Mrs. Parker a receipt merely stating that the money was received subject to the terms of the policy to be issued. The receipt contained no provision that the insurance was or was

not to be in immediate benefit or that the agent had or did not have authority to enter into an oral contract for insurance. The agent promptly returned the application and the premium to the local Norfolk office of his Company.

On the following Saturday, January 11, 1941, as required by the Company and in accordance with its usual custom, the Norfolk office forwarded Parker's application, and all other applications received during that current week, to the home office of the Company in Washington, D. C., for examination and for approval or rejection of the insurance risk. The examination conducted by the home office usually required a week or ten days.

On January 14, 1941, exactly seven days after the date of his application, and one day after it should have been received in the Washington office, Parker was accidentally killed.

About a week later, Parker's application was subsequently returned to the Norfolk office, marked "Rejected." Mrs. Parker was notified of the rejection, and the Company tendered her the return of the $2.17 which she refused.

The evidence showed that the defendant company did not issue or authorize to be issued interim or binding receipts making insurance effective from the date of the application and payment of the premium; that its policies were dated to be effective as of the date of the issuance of the policy, the premuim being credited from that date; and that Sowell was only a special or soliciting agent of the Company authorized to secure applications for life insurance, and had no authority to represent that a policy of his Company would be effective from the date of an application.

Sowell, the agent, testified that he knew he had no authority to bind the Company upon the risk; that he did not state that the insurance would be effective upon payment of the premium; and that he knew that he had to submit all applications to the home office for examination and consequent acceptance or rejection.

Oral contracts to insure or temporary contracts of insurance are held binding when they have been made by general agents or duly authorized agents acting with express

or implied authority, or within the apparent or ostensible scope of their authority. 29 Am. Jur., Insurance, section 135, page 151.

In this case, the undisputed evidence shows that Sowell was only a special agent or solicitor for life insurance and that he had no power, express or implied, to approve the acceptance of an application for a policy, make an insurance contract, issue a policy, or put a policy into effect at any given time. The plain, simple, and unambiguous language of the application and the terms of the receipt negative any apparent or ostensible authority in Sowell to make an oral contract of insurance binding his Company. Both put Gordon Parker on notice that he was not protected unless and until a policy of insurance was issued and delivered to him.

The plaintiff contends that since the printed words on the application are in six point type instead of eight point, the application should not have been admitted in evidence by virtue of Virginia Code, 1936, sections 4227 and 4227a. She does not assign cross-error. There is, however, no merit in her contention. The application was merely an *ex parte* offer or proposal. It did not become a part of an insurance contract or a restriction therein since no contract based thereon was entered into by the Company. It related only how and when a contract might issue. It was an offer to purchase a contract of insurance, not an insurance contract.

The plaintiff further says that Parker ought not to be bound by the application because he did not read the contract, and there is no evidence to show that he could read. This contention is without merit. He should have read the application or have had it read to him before signing it. Whether he did or not, he is chargeable with notice of what it contained. *Royal Insurance Company* v. *Poole*, 148 Va. 363, 138 S. E. 487; *Flannagan* v. *Mutual Insurance Company*, 152 Va. 38, 146 S. E. 353; *Ryan* v. *World Mutual Life Insurance Company*, 41 Conn. 168, 19 Am. Rep. 490.

The plaintiff cannot escape the effect of Parker's written proposal. Nor can she alter or vary its plain and unambiguous terms by evidence of prior or cotemporaneous parol statements. *New York Life Insurance Company* v.

*Franklin,* 118 Va. 418, 87 S. E. 584; *Chamberlin v. Prudential Insurance Company,* 109 Wis. 4, 85 N. W. 128, 83 Am. St. Rep. 851.

Conceding as we must, in view of the verdict of the jury, that Sowell told Parker that the insurance would be immediately effective upon signing the application, the undisputed and conclusive evidence shows that Sowell had no authority to so bind his Company and that he knew he did not have such authority. If, nevertheless, he undertook to do so, he perpetrated a fraud upon the Company for which it is not liable. *Provident Relief Association v. Butts,* 158 Va. 259, 163 S. E. 66; *Royal Insurance Company v. Poole, supra; New York Life Insurance Company v. Fletcher,* 117 U. S. 519, 6 S. Ct. 837, 29 L. Ed. 934; *Ryan v. World Mutual Life Insurance Company, supra.*

It seems clearly apparent from the written application and the premium receipt that a written policy of insurance was contemplated by the agent and the applicant for the insurance rather than an oral contract. This action seems, therefore, an attempt to alter, vary, or contradict by parol evidence the terms of the written agreement.

No verdict in favor of the plaintiff can be properly predicated on the evidence found in the record. The trial court should have sustained the motion of the Company to strike the plaintiff's evidence. Its judgment must, therefore, be reversed, and this court will here enter final judgment for the defendant, the judgment which the trial court should have rendered.

*Reversed and final judgment.*