## 𝔖taunton

### NELLIE MAXEY ELLIOTT v. INTERSTATE LIFE AND ACCIDENT INSURANCE COMPANY.

September 4, 1970.

Record No. 7172.

Present, Snead, C.J., I'Anson, Carrico, Gordon, Cochran and Harman, JJ.

*Joseph R. Johnson, Jr.,* for plaintiff in error.

*E. Marshall Frost* (*Herndon P. Jeffreys, Jr.; John R. Alford,* on brief), for defendant in error.

HARMAN, J., delivered the opinion of the court.

Plaintiff, Nellie Maxey Elliott, instituted her action below by motion for judgment alleging that defendant, Interstate Life and Accident Insurance Company, contracted, on June 16, 1967, with Alvah Phillip Elliott, plaintiff's husband, to insure his life for the sum of $12,000, that she was the beneficiary named in said contract, that Alvah Phillip Elliott died on July 20, 1967, at a time when such contract was in full force and effect. Defendant, in its answer, denied the existence of such a contract of insurance.

At the conclusion of all of the evidence, the court below sustained a motion to strike the evidence and entered summary judgment for the defendant. To review this ruling we granted a writ of error to plaintiff.

██ Under well established rules we must, in these circumstances, view the evidence in the light most favorable to plaintiff.

Mr. and Mrs. Elliott had purchased a home in October, 1964. After some discussion of the matter from time to time, they decided to purchase an insurance policy on his life so that the proceeds would pay off any indebtedness against their home in the event of Mr. Elliott's death.

Mr. Elliott had a "family plan" life insurance policy with defendant and the Elliotts had become acquainted with John L. Hamner, defendant's agent, who regularly collected the premiums on that policy.

Mrs. Elliott made an appointment with Hamner to discuss "mortgage" insurance and on June 13, 1967, Hamner and Carl Claybrook, Staff Manager in defendant's Lynchburg office, met with the Elliotts at their residence.

At this meeting an application for insurance was prepared by Claybrook and signed by Mr. Elliott for a 15-year term life insurance policy for $12,000 designating the plaintiff as primary beneficiary. This application reads, in part, as follows:

> "It is understood and agreed that: (1) there shall be no liability hereunder until a policy is issued to and received by me and the first premium actually paid during the lifetime of all the Proposed Insureds and their continued good health except as provided in the receipt bearing the same serial number as this application; (2) no agent or other person, except an authorized officer of the Company, has the power to make or to modify any contract on behalf of the Company; (3) all the statements contained in Parts I and II hereof are complete and true and all such state-

ments shall form the basis for and be a part of the policy for which application is hereby made; . . ."

The serially numbered receipt referred to in the application contains the following provision:

". . . The insurance under the policy for which application is made shall be effective on the date that a satisfactory Part II of the application is furnished to the Company or on the date of completion of the medical examination (if and when required by the Company), whichever is the later date, if in the opinion of the authorized Officers of the Company at its Home Office in Chattanooga, Tennessee, the persons proposed for insurance are insurable and acceptable for insurance under the rules and practices on the plan of insurance, for the amount of insurance, and at the premium rate set forth in the application."

In the discussions both Hamner and Claybrook indicated to the Elliotts that they did not believe that a medical examination would be required for the policy to be issued. Mr. Elliott did not have the funds available to pay the initial premium so it was agreed that the application would be processed and that Hamner would return to the Elliott home on Friday, June 16, to collect the initial premium of $19.10.

Hamner returned to plaintiff's home on Friday and collected the initial premium. Since the serially numbered receipt was attached to the application which had already been mailed to defendant's home office, he issued a "field receipt" on a form provided by defendant.[1] He advised Mrs. Elliott at that time that a medical examination would be required before a policy would be issued but, since the premium had been paid, the coverage was in effect and would remain in effect unless the medical examination was not acceptable to the defendant, in which case the coverage would be cancelled by defendant.

Mr. Elliott was examined on June 19 by Dr. Pisano, a local physician employed to conduct such examinations for defendant. His medical report and a urine specimen were forwarded to Dr. John E. Collier, defendant's Medical Director, who received them on June 22.

The result of the analysis of this specimen was unsatisfactory because it showed traces of sugar. Dr. Collier then requested Dr. Pisano

[1] See next page.

Received FROM: _____ DATE: 6-16-67

□ Policy  □ Premium
   Contract    Receipt Book

| Policy Number | Amount to Credit |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |

REASON FOR PICKING UP POLICY
AND/OR PREMIUM RECEIPT BOOK:

Form W-20    FIELD RECEIPT    Rev. 3-67.

1. □ IN FORCE — The amount representing premiums distributed as shown at the left.

2. □ IF LAPSED, such amount will be held in ESCROW until application for reinstatement is approved by the Company. Under no circumstances will the Company be liable because of any loss until said policy or policies are reinstated.

3. □ WITH APPLICATION FOR □ WKLY. PREM. □ M.O. □ MDO or □ REG. ORD., which amount was received with the application as shown thereon. If the application is approved and policy issued, this amount will be applied toward premium payments. If the application is not approved, the amount will be returned. No obligation is incurred by the Company, unless policy is issued as applied for upon said application, and unless at the date of delivery of said policy the proposed insured is alive and in good health, regardless of the state of health of the applicant on the date hereof.

EXCEPT the Company agrees if the application is approved as applied for by the Home Office in Chattanooga, Tennessee, the insurance for which application is made shall be effective as of the date of this receipt provided: (1) Any proposed insured is on this date over two years of actual age and in sound health, and (2) At least two weekly premiums for a proposed Weekly Premium policy, or the first full monthly premium for a proposed Monthly Ordinary policy, are paid at the time the application is written, and (3) This receipt is surrendered to the Company.

SIGNED_____ Interstate Life
& ACCIDENT INSURANCE CO.,
CHATTANOOGA, TENN. 37402

to obtain two additional urine samples to be taken on successive days. These were not received by Dr. Collier until July 20.

Information contained in the application and medical examination led Dr. Collier to request certain reports from Lynchburg General Hospital where Mr. Elliott had previously been a patient. The reports from the hospital were not received until July 21.

Mr. Elliott suffered a heart attack on July 20 and died approximately eight hours later.

After Mr. Elliott's death Hamner delivered a check to plaintiff for the amount of coverage under the "family plan" policy, which was admittedly in full force and effect. Plaintiff testified that Hamner, at that time, told her that "everything looked in my favor on the mortgage insurance." She also testified that Hamner told her that Dr. Pisano had called defendant and interceded in her behalf.

Plaintiff and Hamner had several other conversations during the next five or six weeks and on each occasion Hamner indicated that he believed and expected defendant would pay her claim on the "mortgage" policy.

On September 11, Hamner tendered a check to plaintiff for $19.10 and requested her to return the field receipt to him. At that time he told her that the company had declined to pay her claim on the policy applied for on June 13.

The evidence is clear and undisputed that neither Hamner nor Claybrook is an authorized officer of the defendant. Neither had power to approve an application for a policy, make an insurance contract, issue a policy, or put a policy into effect at any given time. They were special agents or solicitors for life insurance and their authority was limited to receiving applications and premiums.

There is no evidence that any authorized officer of the defendant ever arrived at an opinion that Mr. Elliott was insurable and acceptable for insurance under the rules and practices on the plan of insurance, for the amount of insurance, and at the premium rate set forth in the application. In fact, all of the evidence is to the opposite effect.

It is true that oral binders or contracts for temporary insurance are quite common in the insurance business and, when entered into by general agents, or by a duly authorized agent acting within the ostensible scope of his authority, are binding on the insurance company. *Bituminous Casualty Corp.* v. *Baldwin*, 196 Va. 1020, 86 S.E.2d 836 (1955).

But where the agent is a special agent or solicitor of insurance, whose limited authority is brought to the attention of the party with whom he is dealing, no binding contract of insurance can be made by the special agent or solicitor. *Peoples Life Ins. Co.* v. *Parker*, 179 Va. 662, 20 S.E.2d 485 (1942); *Hayes* v. *Durham Life Ins. Co.*, 198 Va. 670, 96 S.E.2d 109 (1957).

Plaintiff argues that the effect of Hamner's action in giving the "field receipt" wherein the box was checked showing that the insurance was in force should bind the defendant since Hamner was authorized to receive premiums and to receipt therefor by the company.

To adopt this position would require us to ignore the plain and unambiguous language of the application in which Hamner's limited authority was brought to Mr. Elliott's attention. The clear effect of this language was to put Mr. Elliott on notice that no coverage was effected until such time as ". . . in the opinion of the authorized officers of the company at its Home Office in Chattanooga, Tennessee, the persons proposed for insurance are insurable and acceptable for insurance under the rules and practices on the plan of insurance, for the amount of insurance, and at the premium rate set forth in the application."

Even accepting, as we must, plaintiff's testimony that Hamner told her that the coverage was in effect because the premium had been paid, the clear and undisputed evidence shows that Hamner had no authority to bind defendant. Mr. Elliott and Hamner were both aware of this lack of authority.

For these reasons the judgment below is affirmed.

*Affirmed.*