Virginia CONNELLY, Appellant,

v.

The PRUDENTIAL INSURANCE COMPANY, Appellee.

No. 78–1637.

United States Court of Appeals, Fourth Circuit.

Argued June 4, 1979.

Decided Dec. 11, 1979.

John P. McGeehan, Alexandria, Va., for appellant.

Lewis T. Booker, Richmond, Va. (Charles S. McCandlish, Hunton & Williams, Richmond, Va., on brief), for appellee.

Before WINTER, BUTZNER and WIDENER, Circuit Judges.

BUTZNER, Circuit Judge:

In this diversity action governed by Virginia law, Virginia Connelly appeals a judgment for the Prudential Insurance Company denying her major medical coverage notwithstanding a jury verdict in her favor. We reverse, reinstate the verdict, and remand for further proceedings.

I

Connelly's complaint contained two counts: the first was based on a hospitalization policy and the second on a major medical policy. She asked for a declaration that the major medical policy was in effect and sought recovery of hospital and medical expenses. Prudential's answer denied liability under both policies. Just before trial, however, the company confessed judgment in the amount of $1800 under the hospitalization policy, and Connelly discontinued action under count one of the complaint. This appeal therefore concerns only the controversy over the major medical policy.

The testimony and documentary evidence is relatively brief. In 1972, Connelly, a college student, reached the age that disqualified her as an additional insured under her parents' medical policy. She then obtained a hospitalization policy from Pru-

dential that was issued October 23, 1972, effective September 2, 1972. On November 30, 1972, she applied to Prudential for a major medical policy. At that time her left knee was in a cast because of torn muscles. She disclosed on the application the condition of her knee. Without objection, she testified that the Prudential agent who took her application assured her that the injury to her knee would not prevent issuance of the policy. Connelly conceded that the agent did not purport to speak authoritatively for Prudential, and he explained that the ultimate decision on the question of insurability remained with the company.

The application that Connelly signed provided in part:

that no agent has the authority to modify any policy, to waive any of Prudential's rights or requirements or to bind Prudential by making any promise or representation.

The application also stipulated:

that except as may be otherwise provided in a Conditional Receipt, SA 34031, issued in connection with this application and bearing the same date as this Part One, no insurance shall take effect unless a policy is issued and delivered by Prudential and accepted by the undersigned . . . .

Connelly paid the initial premium, and Prudential's agent gave her a conditional receipt that stated:

Prudential acknowledges receipt of this payment subject to the following conditions:

1. If Prudential determines, in accordance with its established underwriting rules and practices in effect on the date of this receipt, that some or all of the persons proposed for coverage are insurable on such date for some or all of the coverage applied for, Prudential will issue a policy or policies providing such coverage to the extent permitted by such rules and practices, and with premiums determined accordingly.

2. The effective date of any policy so issued will be the date of this receipt

unless the policy is issued on the basis of a request in the application that the policy bear a later effective date . . . .

Connelly also signed a release of her hospital policy conditioned upon issuance of new coverage. This release provided:

On the condition that coverage under a Health Insurance Policy acceptable to me (or to the applicant if my proposed coverage is as a dependent) is issued by The Prudential Insurance Company of America on the application therefor dated 11/30 1972. I hereby surrender to the Company, and release all my rights under, the above policy, such surrender to be effective at the end of the day preceding the effective date of the new coverage applied for.

It is understood and agreed (a) that the Company is under no obligation to issue new coverage under any Health Insurance Policy, (b) that if such new coverage is not issued this release will be void, the above policy will be returned, and any amount of money collected in connection with the said application will be returned, and (c) that if such new coverage is issued, a return will be made of any premium or fraction thereof paid on the surrendered policy applicable beyond the due date of the first premium for the new coverage applied for.

For a number of weeks Connelly did not hear from Prudential. Her premium check was cashed on December 5, 1972, and her hospital policy was not returned. Finally, she phoned Prudential's office in Jacksonville, Florida, and learned from a company employee that her application had been rejected because of surgery on her right knee and a hiatal hernia. When she protested that she had neither surgery nor a hernia when she applied for the policy, the employee said that these conditions were disclosed with reference to a man's policy which had been placed in her folder and that a company representative would visit her. The representative came to her home and told her that it seemed an error had been made, and he would report to the company and contact

her. She testified that she heard nothing further from the company or its representative.[1]

Prudential did not present either its agent or representative as witnesses, nor did it question the accuracy of Connelly's disclosure of the condition of her knee in her application. Its only witness was its "health change underwriter" who testified that she rejected Connelly's application in accordance with the company's health insurance underwriting manual because she had a joint injury in a cast which could not be evaluated. Prudential did not introduce its underwriting manual. An entry dated December 12, 1972, on the application noted that it was rejected for the following reason: "P.P. [postponed] until full recovery & release by Doctor." A company record dated December 13, 1972, contained the following notation: "Increase declined code 8z. We cannot consider further until she has fully and completely recovered from the knee surgery and been released by her doctor." The underwriter explained that code 8z means "disorder of bones, joints, muscles, or other physical deformities." She did not explain the source of the information concerning the erroneous entry about surgery, and Prudential did not introduce its code containing the meaning of 8z.

At the close of the evidence, Prudential moved for a directed verdict on the ground that the evidence was uncontradicted and it was entitled to prevail as a matter of law. Expressing some reservations, the trial judge denied the motion and told counsel that he would submit the case to the jury on the theory that all of the documents when read together were ambiguous. The parties agreed that the jury could return a general verdict finding in favor of either Connelly or Prudential and that subsequent proceedings would be conducted without the intervention of a jury if Connelly prevailed.

In his instructions to the jury the court charged, among other things, that in order for Connelly to prevail the jury must find

that "it has been proved by a preponderance of the evidence that but for this erroneous information that Miss Connelly claims was the basis for her rejection, that indeed Prudential would have issued the disputed policy, but for that error as claimed by the plaintiff." The instructions emphasized that in order to come to this conclusion the jury would have to believe that the testimony of Prudential's underwriter was not true. On this point, the court told the jury "you would have to believe that the testimony of [Prudential's underwriter] that it was not issued by her based upon Miss Connelly's physical condition and not upon any error, was indeed not true . . . ." The court also instructed the jury that if they found "that indeed the policy was rejected because of Miss Connelly's own physical condition, under the circumstances, then your verdict would be for the defendant."

The jury returned its verdict in favor of Connelly, and Prudential moved for judgment notwithstanding the verdict. The district court granted Prudential's motion. It ruled that the provision of the application concerning the agent's lack of authority to bind the company precluded Connelly from relying on his assurances and that the underwriter's testimony was uncontradicted. Relying on *Peoples Life Insurance Co. v. Parker*, 179 Va. 662, 20 S.E.2d 485 (1942), the court concluded:

> [I]t is manifest that as a matter of law the Connelly application is unambiguous, that it is simply an offer which Prudential never accepted. In face of clear language read and understood by Connelly, an agent could not bind Prudential and Prudential was not bound until a policy issued. No policy was issued, no contract of insurance was formed.

The court gave no effect to the conditional receipt that Prudential's agent issued to Connelly.

II

*Peoples Life Insurance Co. v. Parker*, 179 Va. 662, 20 S.E.2d 485 (1942), estab-

---

1. Answers to interrogatories disclose that Connelly has incurred medical bills which Prudential has declined to pay. The interrogatories were not read to the jury.

lishes that Connelly's application standing alone did not create a contract of insurance and that Connelly cannot rely on the agent's assurances to bind the company. Indeed, were it not for Prudential's conditional receipt *Parker* would bar Connelly's recovery. The insurance application in *Parker*, however, was not accompanied by a conditional receipt. Here, in contrast, Connelly's application incorporated by reference Prudential's conditional receipt to Connelly. The receipt provided that if the company determined that Connelly was insurable according to its rules on the date of the receipt, it would issue a policy and that the effective date of the policy, if one were to be issued, would be the date of the receipt. To determine the significance that Virginia law attributes to a conditional receipt, we must look beyond *Parker*.

The leading case in this circuit dealing with conditional receipts is *Wright v. Pilot Life Insurance Co.*, 379 F.2d 409 (4th Cir. 1967). There the conditional receipt provided that if the company declined the application, no policy would be issued, but if the application were approved, the insurance would become effective from the date of the application. The applicant was killed before the company acted on the application, and subsequently the company denied the claim. We reversed a judgment for the company and remanded the case for trial before a jury on the issue of the applicant's insurability in accordance with the company's underwriting standards on the date of the conditional receipt.[2]

*Wright* dealt with a transaction governed by North Carolina law, but we have recognized that Virginia law is essentially similar. In *Evers v. Standard Security Life Insurance Co. of New York*, 345 F.Supp. 1162 (W.D.Va.1972), *aff'd* 490 F.2d 1407 (4th Cir. 1974) (table), an applicant for insurance was issued a conditional receipt which provided that the insurance would become effective on the date of the receipt if the company was satisfied after investi-

gation that the applicant was insurable. The applicant died before the policy was issued. Citing *Elliott v. Interstate Life & Accident Insurance Co.*, 211 Va. 240, 176 S.E.2d 314 (1970), the district court denied the company's motion for summary judgment and ruled that the case must be submitted to a jury on the question of the applicant's insurability under the company's standards. The district court, expressing some doubt about the compatibility of *Wright* and *Elliott*, certified its order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). We heard the appeal and summarily affirmed.

In *Elliott* the applicant did not have the money to pay the premium when he completed his application. A few days later he paid the agent who gave him a conditional receipt which provided that the insurance would be effective on the date of the receipt if the application were approved. The receipt also contained a box, which the agent checked, indicating that the insurance was in force. An initial physical examination by the company's local physician disclosed the necessity for further examinations. Before they were completed, the applicant died, and the company refused to pay the claim. At the ensuing trial, the state trial judge sustained a motion for a directed verdict at the conclusion of the evidence and entered summary judgment for the company. The Virginia Supreme Court affirmed, treating two aspects of the case. First it held that the agent did not have authority to bind the company by indicating that the insurance was in force. This point need not detain us for it is simply an application of the rule expressed in *Peoples Life Insurance Co. v. Parker*, 179 Va. 662, 20 S.E.2d 485 (1942), to which we have noted our adherence. The Court, however, went on to discuss the issue of the applicant's insurability, and it held that there was no evidence that the company found he was acceptable under the company's regulations. It pointed out that "all of the evidence is to the opposite effect." 211

---

2. Although not explicitly stated, it appears from the opinion that the dates of the application and the conditional receipt were the same.

Va. at 244, 176 S.E.2d at 317. As the district judge who decided *Evers* observed, this issue arose in *Elliott* because of the provisions of the conditional receipt. *See Evers*, 345 F.Supp. at 1165.

By affirming *Evers*, we indicated our understanding of Virginia law on this subject, and we find no intervening Virginia case that requires us to change our views.

### III

■ Prudential insists that the judgment notwithstanding the verdict must be affirmed because the insurance documents were clear and unambiguous, and the court should have construed them instead of submitting their meaning to the jury. It contends, as it did in the district court, that *Parker* is indistinguishable.

The difficulty with Prudential's argument is its failure to recognize the significance of the conditional receipt, an issue on which *Parker* is silent. Instead of submitting the meaning of the documents to the jury, the district judge could have construed them in accordance with *Wright, Evers,* and *Elliott* as justifying recovery for Connelly, if she were insurable according to the company's underwriting rules on the date of the conditional receipt.[3] Since the jury found for Connelly on this question, its verdict is consistent with the construction the court should have put on the documents had it undertaken to make a definitive ruling about their meaning during the course of the trial. Submission of the meaning of the document to the jury because of ambiguity was at most harmless error; it did not "affect the substantial rights of the parties." *See* 28 U.S.C. § 2111.[4]

■ Admission of Connelly's testimony concerning statements made to her by the company's agent when she applied for the policy does not justify the judgment notwithstanding the verdict. This evidence was admitted without objection. The agent's statements did not differ materially from the uncontradicted statement made by the company's home office representative. Both statements dealt with the effect of the injury to Connelly's knee. Before the policy was issued the agent said the injury would not bar issuance of the policy. Months later, the representative, after investigating her rejection, expressed the opinion that a mistake seemed to have been made. To this extent the statements were simply cumulative. At most, admission of the agent's statements would have raised a question about the propriety of a new trial. Prudential, however, has not moved for a new trial, and we find no plain error justifying retrial. *See* 28 U.S.C. § 2111.

### IV

■ Contrary to the ruling of the district court, we conclude that the evidence of Connelly's insurability on the date of the conditional receipt presented a question for the jury. In reaching this conclusion, we have been guided by the familiar principle that we must give Connelly the benefit of every legitimate inference in her favor. If there was evidence upon which the jury could reasonably find in her favor, we must reverse the judgment notwithstanding the verdict. *Mays v. Pioneer Lumber Corp.,* 502 F.2d 106, 107 (4th Cir. 1974).

---

3. The record does not disclose that counsel for either party called *Wright, Evers,* and *Elliott* to the attention of the district court. These cases can be found quite readily by checking Shepard's citations starting with *Parker,* which Prudential claimed was the controlling case. Connelly's counsel, nevertheless, relied on the rationale of these cases. Before trial he submitted to the court and Prudential's counsel a proposed charge that stated in part:

  If you find that knowledge that plaintiff had a strained knee would have lead defendant to refuse to issue a policy and if you further find that defendant had not previously issued a

policy, you will find a verdict for the defendant. If you find that such condition would not have caused defendant to refuse to issue plaintiff a policy, your verdict will be for the plaintiff.

4. Arguably, the provisions of the release of the hospital policy were inconsistent with the major medical application and conditional receipt. Viewed in this light, submission of the issue to the jury was not error. This inconsistency, however, was not the principal question about the document that concerned the court and counsel.

Prudential's representative, who was dispatched from the home office to visit Connelly in response to her protests about being rejected, told her that it seemed a mistake had been made. The company record introduced at trial contained the erroneous notation that she had undergone surgery on her knee. The company did not produce its underwriting manual or its code that explained the 8z notation in her file. Instead it relied on its underwriter who testified about events that occurred several years before the trial. Prudential, moreover, did not inform Connelly why the underwriter rejected her until she brought this action.

The district judge emphatically told the jury that they could find for Connelly only if they did not believe the underwriter. With the benefit of hindsight, it appears that perhaps the issue could have been framed in the charge with greater clarity. Nevertheless, the instruction was adequate. It placed the burden of proof on Connelly to show that she would have been insured were it not for the erroneous information the company put in her file. The erroneous information in the file justified the jury's acceptance of the opinion concerning a mistake voiced by Prudential's home office representative. The jury could rightfully infer that a representative dispatched by an insurance company's home office to deal with a controversy of this nature had knowledge of the company's underwriting practices on which he ventured an opinion. This inference is particularly compelling because Prudential did not call its home office representative as a witness.

Prudential did not alternatively move for a new trial, and we find no warrant for ordering retrial. Accordingly, we reinstate the verdict and remand the case for further proceedings. *See* 9 Wright and Miller, Federal Practice and Procedure 2540 (1971).

*REVERSED AND REMANDED.*