**Naaweth ROY, et al., Plaintiffs,**

v.

**NORTHWESTERN NATIONAL LIFE INSURANCE COMPANY,**
**Defendant.**

**Civil No. S 96–3268.**

United States District Court,
D. Maryland.

Aug. 11, 1997.

Malcolm B. Kane, LLoyd, Kane & Wieder, Ellicott City, MD, for Plaintiffs.

C. Michael Deese, Sarah Daly Jackowski, Charapp, Dees & Weiss, LLP, Washington, DC, for Defendant.

## MEMORANDUM OPINION

SMALKIN, District Judge.

This matter is before the Court on the parties' cross-motions for summary judgment and their respective responses thereto. No oral argument is deemed necessary. Local Rule 105.6 (D.Md.)

The Plaintiffs, Naaweth Roy, Charles L. Roy, and Doris Roy, the sister and parents of Charles Jason Roy ("Mr. Roy"), have sued the defendant, Northwestern National Life Insurance Company ("NWNL"), for a death benefit under a Temporary Insurance Agreement and Receipt No. 4042 (the "Receipt"), which they claim is due as a result of Mr. Roy's death.[1] The following facts are undisputed.

On December 5, 1995, Mr. Roy, a Maryland resident, applied for life insurance in the amount of $100,000 at the Vienna, Virginia office of Jonathan R. Kurtz, a licensed NWNL agent. Def's Mem. in Supp. of Mot. for S.J. at 2 (hereinafter "Def's Mem.") As part of the application process, Mr. Kurtz read to Mr. Roy each of the questions contained on the application form and recorded Mr. Roy's responses on the form. Id. at 3. Among the questions asked was a series pertaining to Mr. Roy's health and medical history. In his answers, Mr. Roy reported, among other things, that he did not suffer from asthma, that he did not currently use drugs and had not used them in the past, that he was not presently taking any medication, and that no member of his immediate family suffered from high blood pressure. Id. at 4. He identified Dr. Cheng as his doctor and responded "no" when asked whether he had consulted any other physicians for any reason. Id. The only medical condition Mr. Roy noted on his application was an appendix operation in 1978.[2] Id. Mr. Roy signed the completed application, representing that his responses were accurate and acknowledging that any misrepresentations could result in a loss of coverage. Id. at Ex. A.

Based upon Mr. Roy's answers, Mr. Kurtz determined that Mr. Roy qualified for temporary insurance. Id. at 5. Upon Mr. Roy's payment of the first $200 premium, Mr. Kurtz gave him the Receipt, which provided, in pertinent part, that

> **Notice:** The insurance you applied for is not now in effect. If, at the time all the Conditions in the Receipt have been met, and the Receipt has not ended, we will either: 1) Pay the Temporary Insurance Amount[3] if an Event listed in the Table of Benefits (Table) occurs ... (emphasis in original).

> **A. Conditions** ... 2. All parts of the Application, including medical exams and tests, if required, are completed, and no material misstatements were made.

Id. at Ex. C.

Mr. Kurtz explained to Mr. Roy that, on applications for coverage of $100,000 or

---

1. Naaweth Roy is suing in her individual capacity as the beneficiary under the Receipt. Charles L. Roy and Doris Roy are suing in their capacities as personal representatives for the estate of Charles Jason Roy.

2. Since the onset of litigation, NWNL has learned that several of Mr. Roy's responses on his application were inaccurate. Specifically, Mr. Roy's prior medical records show that he was treated for high cholesterol, asthma, and vertigo, and that he had reported a family history of hypertension to Dr. Cheng. Def's Mem. at 12. The records also show that Mr. Roy had been prescribed a Ventolin inhaler for his asthma. Id. In addition, the autopsy of Mr. Roy revealed the presence of alcohol and opiates in his system.

Id. at 7. The parties dispute how the opiates entered Mr. Roy's system, the plaintiffs contending that the drugs were administered at the hospital prior to Mr. Roy's death, the defendant contending that the opiates were present when Mr. Roy was admitted to the hospital.

3. According to the terms of the Receipt, the Temporary Insurance Amount is the lesser of the insurance applied for or the amount listed in the Table for the event resulting in the death of the insured. The Table of Benefits lists the maximum amount payable as $500,000. The parties agree that, because $100,000 is the lesser amount, that is the amount that could possibly be paid under the death benefit.

more, NWNL required applicants to undergo a fasting blood and urine test and that his temporary insurance would not go into effect until he provided the samples to APPS paramedic service for testing. *Id.* at 7. He also informed Mr. Roy that APPS would contact him to schedule a time to obtain the blood and urine samples. *Id.* Mr. Kurtz noted on the application that APPS would be conducting the medical examination.

On December 9, 1995, only four days after completing the NWNL application, Mr. Roy was involved in a single-car accident in New Jersey that resulted in his death. *Id.* Shortly after his death, APPS attempted to contact Mr. Roy to set up an examination date and was informed that he had died. *Id.* at 7–8. APPS notified Mr. Kurtz who, in turn, notified NWNL. *Id.* at 8. On December 14, 1995, NWNL received for processing from Mr. Kurtz, Mr. Roy's application for life insurance. *Id.* The application was denied, because Mr. Roy died before his blood and urine samples could be tested. *Id.* Mr. Roy's $200 premium was refunded. *Id.*

Plaintiffs filed a complaint in this Court based on diversity jurisdiction, seeking NWNL's payment of the $100,000 death benefit allegedly due under the Receipt. After discovery was completed, the defendant filed a motion for summary judgment. The plaintiff opposed defendant's motion and, in turn, filed a cross motion for summary judgment. In its motion, the defendant argues that because Mr. Roy had not provided the company with a blood and urine sample, NWNL had no obligation to pay the death benefit upon Mr. Roy's death. Alternatively, the defendant argues that Mr. Roy made material misrepresentations in his application and, had they not been made, NWNL would not have offered him temporary insurance.

The plaintiffs oppose the defendant's motion for summary judgment on the grounds that (1) the Receipt is ambiguous as to whether a medical exam is required and, therefore, must be construed against the insurer; (2) Mr. Roy satisfied the condition; (3) under Virginia law, an insurer may not require a medical exam as a condition of temporary insurance; and (4) Mr. Roy did not make material misrepresentations in his application. In support of their cross motion for summary judgment, the plaintiffs again argue that, under Virginia law, an insurer may not require a medical exam as a condition of temporary insurance. As discussed below, plaintiffs' arguments in opposition to defendant's motion are not availing, and this Court will grant summary judgment in favor of the defendant. For similar reasons, plaintiffs' cross motion for summary judgment will be denied.

I.

Summary judgment may be entered in a civil case if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

In considering a motion for summary judgment, a court must consider the facts and draw its inferences in the light most favorable to the party opposing the motion. *See Tuck v. Henkel Corp.,* 973 F.2d 371, 374 (4th Cir.1992), *cert. denied,* 507 U.S. 918, 113 S.Ct. 1276, 122 L.Ed.2d 671 (1993). Nonetheless, such inferences "must, in every case, fall within the range of reasonable probability and not be so tenuous as to amount to speculation or conjecture." *Thompson Everett, Inc. v. National Cable Advert.,* 57 F.3d 1317, 1323 (4th Cir.1995). The task of the Court is to decide whether there is a genuine issue for trial. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The Court will grant summary judgment if there is "no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material only if, under the governing substantive law, it affects the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Thus, where the record could not support a finding by the

trier of fact for the non-movant, there is no genuine issue for trial and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## II.

■ The first issue to be decided in this diversity case is choice of law. In determining choice-of-law issues, a federal court in a diversity case "must apply the conflict of law rules of the state in which it sits." *Nationwide Mut. Ins. Co. v. Wendler,* 796 F.Supp. 201, 202 (D.Md.1992). In insurance contract cases, Maryland courts generally follow the rule of *lex locus contractu,* which requires that the construction and validity of a contract be determined by the law of the state where the contract is made. *Id.* For choice-of-law purposes, a contract is made where the last act necessary to make the contract binding occurs. *Sting Sec., Inc. v. First Mercury Syndicate, Inc.,* 791 F.Supp. 555, 558 (D.Md.1992). Typically, "this is where the policy is delivered and the premiums are paid." *Id.; Commercial Union Ins. v. Porter Hayden,* 97 Md.App. 442, 451–452, 630 A.2d 261, 266 (1993), *vacated and remanded on other grounds,* 339 Md. 150, 661 A.2d 691 (1995).

■ Although it is unclear where the blood and urine tests were to be conducted, arguably the last act necessary to make the temporary insurance contract binding, Mr. Roy paid the first premium and was given a copy of the Receipt in Virginia. Therefore, it would appear that Virginia law would apply in this case.

■ The plaintiffs argue, however, that in this case a limited exception to the *lex locus contractu* rule applies, the result being that Maryland law governs this action. Under the exception, application of a foreign state's law is rejected when "a contractual provision is contrary to Maryland public policy." *Allstate Ins. Co. v. Hart,* 327 Md. 526, 530, 611

A.2d 100, 102 (1992). The plaintiffs contend that application of Virginia law would violate the public policy reflected in Md. Ann. Code, art. 48A, § 377A (1994), which provides:

> No life insurance policy … shall be delivered or issued for delivery in this State if it contains any of the following provisions:
>
> 1. A provision that the contract is to be construed according to the laws of any other state or country.

In order to override the *lex locus contractu* rule, "the public policy must be very strong and not merely a situation in which Maryland law is different from the law of another jurisdiction." *Allstate Ins. Co. v. Hart,* 327 Md. at 530, 611 A.2d at 102. The plaintiffs bear a heavy burden in urging rejection of foreign law on the ground of public policy. *Id.*

This Court has not located any cases in which § 377A has provided the basis for an exception to the rule of *lex locus contractu.* Regardless, the Court is of the view that the exception is inapplicable. First, the Receipt at issue contains no choice-of-law provision that conflicts with the asserted public policy of § 377A; in fact, there is no choice-of-law provision whatsoever contained in the Receipt. It is only the operation of Maryland's choice-of-law principles which results in the application of Virginia law. Second, § 377A applies by its express terms to life insurance policies delivered in Maryland. Assuming that the Receipt constitutes a life insurance policy, if delivery occurred, it occurred in Virginia, not Maryland.[4] Accordingly, this Court will apply Virginia law.

## III.

■ Under Virginia law, insurance policies, including written binders or other temporary insurance contracts, are construed in accordance with general contract principles. *Dairyland Ins. Co. v. Douthat,* 248 Va. 627, 449 S.E.2d 799, 801 (1994); *see generally* Va. Code Ann. § 38.2–304 (Michie 1997). The

---

4. Resolution of the choice of law issue is largely academic because, as plaintiffs concede, there is no material difference between Virginia and Maryland law on the controlling issue raised. *See* Mem. in Opp'n to Defs. Mot. for S.J. at 2 ("The

rule applied by these [Virginia] cases, like the rule applied in the Maryland precedent, *Simpson v. Prudential Insurance Company,* 227 Md. 393, 177 A.2d 417 (1962) is essentially [the same].")

language to be construed in the Receipt consists of the following:

> **Notice:** The Insurance you applied for is not now in effect. If, at the time all the Conditions in the Receipt have been met, and the Receipt has not ended, we will either: 1) Pay the Temporary Insurance Amount if an Event listed in the Table of Benefits ... occurs....
>
> **A. Conditions** ...
>
> 2. All parts of the Application, including medical exams and tests, if required, are completed, and no material misstatements were made.

The plaintiffs contend that the second condition is ambiguous because the Receipt does not indicate within its four corners whether any medical exams and tests were required of Mr. Roy. They argue that, in light of this ambiguity, the provision should be construed against NWNL and in their favor. An ambiguity exists "when the language admits of being understood in more than one way or refers to two or more things an the same time." *Renner Plumbing, Heating & Air Conditioning, Inc. v. Renner,* 225 Va. 508, 303 S.E.2d 894, 898 (1983). The second condition in the Receipt is not ambiguous. It does not convey two different meanings, but simply fails to identify specifically what tests are required. Reference to extrinsic evidence does not render the referring language ambiguous.

▮ To clarify the parties' intentions, the defendant offers evidence, through the affidavit of Mr. Kurtz, that the agent told Mr. Roy that blood and urine tests were required for applications of insurance for $100,000 or more and that such tests must be

completed before the temporary insurance was in effect.[5] The defendant also offers in evidence Mr. Roy's application for insurance, on which Mr. Kurtz noted that APPS would be taking an examination. Def's Mem. at Ex. A. Although, generally, parol evidence of prior or contemporaneous oral negotiations is inadmissible to alter, contradict, or explain the terms of an unambiguous written instrument, a signatory to the instrument may introduce parol evidence to establish a defense based on the existence of a condition precedent. *Price v. Taylor,* 251 Va. 82, 466 S.E.2d 87, 89 (1996). Not all evidence alleged to establish a condition precedent is admissible, however. The " 'condition precedent must be neither inconsistent with the instrument itself, nor of such a character that its performance would render the instrument wholly ineffective or nugatory.' " *Id.* (quoting *Walker & Laberge Co. v. First Nat'l Bank of Boston,* 206 Va. 683, 146 S.E.2d 239, 244 (1966)).

▮ In this case, the extrinsic evidence of Mr. Kurtz's statement and the notation on the application about testing by APPS are admissible because they establish the fasting blood and urine tests as conditions precedent to NWNL's liability under the Receipt.[6] This evidence is not inconsistent with the Receipt, because it explains whether blood and urine tests were required of Mr. Roy.

In an attempt to generate a factual dispute, the plaintiffs argue that Mr. Roy may have thought he satisfied the condition when he answered questions about his health and agreed to provide NWNL with his medical records. Besides amounting to idle speculation, whether Mr. Roy may have thought he

---

**5.** The Court notes that the Dead Man's Statute, Md. Code Ann. Cts. & Jud. Proc. § 9–116, would not preclude the admission of Mr. Kurtz's statements as to Naaweth Roy, the beneficiary under Mr. Roy's policy, because the Dead Man's Statute is inapplicable to a suit brought by the beneficiary of an insurance contract. *Stout v. Home Life Ins. Co.,* 651 F.Supp. 28, 31 (D.Md.1986). In that the estate of Mr. Roy was not a beneficiary of the policy, it would appear to have no claim to any death benefits in the first place, thus vitiating any possible question of the Dead Man's Statute.

**6.** It is apparent from the language of the Receipt that the fasting blood and urine tests were intended to be conditions precedent, not subse-

quent. The condition provides that "[i]f at the time all the Conditions in the Receipt have been met ..., we will ... pay...." The phrase "at the time" simply means "when" all the conditions in the Receipt have been met. The verb "will pay" is in the future tense, indicating that the paying will take place in the future or after the conditions have been met. Because the language requires that the conditions be satisfied first, **before** NWNL's duty to pay is triggered, the conditions are precedent. Furthermore, because Mr. Roy did not have the blood and urine tests taken before he died, NWNL has no duty to pay the death benefit under the Receipt.

substantially satisfied the condition is irrelevant to whether the condition was, in fact, satisfied. Such conjecture does not amount to a genuine dispute of material fact that would preclude the entry of summary judgment. *Cf. Steever v. Bristol–Myers Co.,* 727 F.Supp. 986, 989 (D.Md.1989) ("Factual disputes that are irrelevant or unnecessary will not be counted" in a summary judgment motion). *See also Wilson v. Clancy,* 747 F.Supp. 1154, 1157–1158 (D.Md.1990), *aff'd,* 940 F.2d 654 (4th Cir.1991) (speculation as to testimony that testator might give were he still alive is insufficient to oppose summary judgment based on movant's uncontradicted affidavit).

The plaintiffs further argue that under Virginia case law, a medical test may not be a condition precedent to a temporary insurance agreement. They rely on *Connelly v. Prudential Ins. Co.,* 610 F.2d 1215 (4th Cir. 1979); *Wright v. Pilot Life Ins. Co.,* 379 F.2d 409 (4th Cir.1967); and *Evers v. Standard Security Life Ins. Co. of N.Y.,* 345 F.Supp. 1162 (W.D.Va.1972). These cases are distinguishable, however, because the receipts in those cases were conditioned on an applicant's insurability, and not the completion of certain medical tests.

In *Wright v. Pilot Life Ins. Co.,*[7] the conditional receipt provided that if the company declined the application, no policy would be issued, but if the company found the applicant insurable, the insurance would be effective from the date of the application. 379 F.2d at 410. The applicant died before the company acted on the application, and, upon learning of the applicant's death, the company denied the death claim. *Id.* at 411.

In reversing the judgment in favor of the insurance company and remanding the case for a jury trial on the issue of insurability, the Fourth Circuit held that a contract for temporary insurance, covering Wright at his death, existed if Wright was in fact insurable when he applied for the policy. The Court disagreed with the district court's determination that a medical examination was an absolute precondition to completion of the application, but noted that

[w]e do not mean to imply affirmative misconduct by the soliciting insurance agent. We suggest only that if nothing is said about the legalistic phrasing of the receipt, and the agent accepts an application for insurance together with the first premium payment, the applicant has reason to believe that he is insured.

*Id.* (quoting *Prudential Ins. Co. v. Lamme,* 83 Nev. 146, 425 P.2d 346 (Sup.Ct.1967)).

In *Evers v. Standard Security Life Ins. Co. of N.Y.,* the applicant for insurance was issued a receipt that provided that the insurance would become effective on the date of the receipt if the company determined after a medical investigation that the applicant was insurable. 345 F.Supp. at 1163. The applicant died before the policy was issued, and the insurance company rejected the application. *Id.* at 1164. Relying on *Wright,* the district court denied the company's motion for summary judgment, holding that a jury was entitled to determine whether the applicant satisfied the company's insurability standards.

The Court found two points in *Wright* particularly significant:

First, the insurer, having accepted the premium, may not decline to issue a policy unless it has a good reason for doing so, other than a wish to avoid payment. The applicant's intervening death, therefore, is not a sufficient reason. Second, completion of a medical examination, and presumably the submission of all relevant information requested by the company before the intervening casualty is not an absolute condition precedent to completion of the application.

*Id.* at 1165–1166.

In *Connelly v. Prudential Ins. Co.,* the applicant was issued a receipt that acknowledged payment of the premium and provided that coverage would be effective as of the date of the receipt if the applicant were determined to be insurable under its underwriting rules and practices on such date. While the insurer was considering her application, the applicant incurred medical ex-

---

**7.** Wright dealt with a transaction governed by North Carolina law, but the Virginia courts have recognized that Virginia law is essentially similar. *Connelly,* 610 F.2d at 1219.

penses. The insurer then rejected Connelly's application. At trial, the jury returned its verdict in favor of the applicant, upon which the district court granted the insurer's motion for judgment notwithstanding verdict. On appeal, the Fourth Circuit reinstated the verdict, noting that the district court failed to accord any significance to the conditional receipt under which recovery would have been justified if Connelly were insurable according to the company's underwriting rules.

 *Wright, Evers,* and *Connelly* do not stand for the proposition that an insurer can never condition temporary insurance on the completion of medical exams. Rather they represent an attempt to constrain an insurer from arbitrarily rejecting an application for insurance conditioned on insurability when the insurer learns of the applicant's death or injury before it has determined insurability. These cases are inapposite to the case before the Court because the Receipt conditions temporary insurance, in part, on the completion of medical tests, rather than on insurability. The Receipt expressly provides that the insurance is "not now in effect" and that certain conditions, such as payment of the premium and completion of any required medical tests, must be satisfied before the insurer would be obligated to pay a death benefit under the Receipt. This language, coupled with Mr. Kurtz's affidavit and the notation on the application, clearly conveys that the fasting blood and urine tests must have been completed before NWNL was obligated to pay any death benefit.

Because insurance law is, at base, contract law, nothing in the cited cases prevents a receipt-type contract from being drafted so as to condition payment on testing, as the insurer did here, rather than on insurability, as the insurer did in the cited cases. The law does not prohibit the drafting of a contract in a way that avoids results reached in similar cases, but with different contractual language.

Because the Court holds that the taking of the fasting blood and urine tests was a condition precedent to NWNL's duty to pay the death benefit and because that condition was not satisfied, the Court need not consider whether Mr. Roy made material misrepresentations to NWNL.

For the foregoing reasons, this Court will enter an order granting the defendant's motion for summary judgment and denying the plaintiffs' cross motion for summary judgment.

### JUDGMENT ORDER

For the reasons stated in the foregoing Memorandum Opinion, it is, this 11th day of August,1997, by the Court, ORDERED and ADJUDGED:

1. That the defendant's motion for summary judgment BE, and hereby IS, GRANTED;

2. That the plaintiffs' cross motion for summary judgment BE, and hereby IS, DENIED;

3. That Judgment BE, and hereby IS, ENTERED in favor of the defendant, against the plaintiffs with costs; and

4. That the Clerk of Court mail copies of this Judgment Order and of the foregoing Memorandum Opinion to counsel for the parties.