**J. Philip HYDE, Jr., et al.,**

v.

**FIDELITY & DEPOSIT COMPANY OF MARYLAND.**

**Civil No. Y–97–2497.**

United States District Court,
D. Maryland.

Oct. 16, 1998.

---

Jonathan M. Jacobs, Washington, DC, James H. Schropp, Washington, DC, and Anthony S. Yoo, Washington, DC, for Plaintiffs.

Thomas S. Schaufelberger, Washington, DC, for Defendant.

## MEMORANDUM OPINION

JOSEPH H. YOUNG, Senior District Judge.

### I.

This matter is before the Court on the parties' cross-motions for summary judgment. The action arises out of a demand for attorneys fees by the former directors [hereinafter "Directors"] of Liberty Financial Corporation and Liberty Savings Bank under a directors and officers liability policy [hereinafter "Policy"] issued by Fidelity and Deposit Company of Maryland [hereinafter "Fidelity"]. The attorneys fees were incurred in connection with an investigation of the Directors instituted by the Resolution Trust Corporation [hereinafter "RTC"] as receiver for Liberty.

RTC instituted an investigation of the Directors due to a $6.4 million loan made by Liberty to the SPR Corporation in July 1989 to fund the construction of an office building in Warrenton, Virginia. The loan allegedly violated the loans-to-one borrower limitation by over $2 million. RTC's investigation revealed evidence of negligence in connection with the making of the SPR loan, prompting Fidelity's attorney to commence negotiations with RTC. Fidelity succeeded in negotiating a release for the Directors with a payment of $150,000.00. Fidelity paid the $150,000.00 settlement but has refused to pay the Directors' attorneys fees.

In the three years from the time RTC took control of Liberty as its receiver until the

settlement, the Directors allegedly incurred legal fees of $96,294.75 and related expenses of $4,872.48 in defending against the investigation by RTC. Directors seek reimbursement for the total amount of $101,167.23.

## II.

Summary judgment may be granted in a civil case where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the Court must consider the facts and draw any inference in the light most favorable to the nonmoving party. *Tuck v. Henkel Corp.*, 973 F.2d 371, 374 (4th Cir.1992), *cert. denied*, 507 U.S. 918, 113 S.Ct. 1276, 122 L.Ed.2d 671 (1993). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If a motion for summary judgment is properly made and supported, the burden shifts to the opposing party to show that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n. 11, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Because there are no genuine disputes as to any material facts, this case is proper for summary judgment.

## III.

■ In this federal diversity case, the Court must decide which state's law applies. "In insurance contract cases, Maryland courts generally follow the rule of *lex locus contractu*, which requires that the construction and validity of a contract be determined by the law of the state where the contract is made." *Roy v. Northwestern Nat'l Life Ins. Co.*, 974 F.Supp. 508, 512 (D.Md.1997), *aff'd* 141 F.3d 1159 (4th Cir.1998) (citing *Nationwide Mut. Ins. Co. v. Wendler*, 796 F.Supp. 201, 202 (D.Md.1992)); *Aetna Casualty & Surety Co. v. Souras*, 78 Md.App. 71, 552 A.2d 908, 911 (Md.App.1989) (citing *Traylor v. Grafton*, 273 Md. 649, 660, 332 A.2d 651 (1975)). "The *locus contractu* of an insurance policy is the state in which the policy is

delivered and the premiums are paid." *Aetna*, 552 A.2d at 911 (citing *Sun Ins. Office v. Mallick*, 160 Md. 71, 81, 153 A. 35 (1931)); *Roy*, 974 F.Supp. at 512 (citing *Sting Sec., Inc. v. First Mercury Syndicate, Inc.*, 791 F.Supp. 555, 558 (D.Md.1992)). The Policy was countersigned in Virginia and Liberty paid the premiums to Fidelity in Virginia. *See* Schropp decl. ¶ 3. Thus, Virginia law applies.

■ Under Virginia law, insurance policies are to be interpreted in accordance with general contract principles. *Roy* at 512 (citing *Dairyland Ins. Co. v. Douthat*, 248 Va. 627, 449 S.E.2d 799, 801 (1994)). If there is an ambiguity in a contract, Virginia courts construe the ambiguity strictly against the insurer. *White Tire Dist. v. Pennsylvania Nat'l Mut. Casualty Ins. Co.*, 235 Va. 439, 441, 367 S.E.2d 518, 519 (1988). Virginia law finds an ambiguity in a contract "when language admits of being understood in more than one way or refers to two or more things at the same time." *Renner Plumbing, Heating & Air Conditioning, Inc. v. Renner*, 225 Va. 508, 303 S.E.2d 894, 898 (1983). However, if the disputed terms are unambiguous, the court will give the words their ordinary meaning and enforce the policy as written. *Atlas Underwriters, Ltd. v. Meredith–Burda, Inc.*, 231 Va. 255, 259, 343 S.E.2d 65, 68 (1986).

### A.

■ The Policy provides coverage for payments incurred in connection with a "claim" against the Directors. Fidelity argues that because the investigation merely involved a potential claim, no obligation arose under the Policy. Because there is no definition of "claim" in the Policy, the Court must look to Virginia law to determine whether a "claim" was asserted against the Directors. Virginia law construes insurance policies in accordance with general contract principles. *Roy* at 512 (citing *Dairyland Ins. Co. v. Douthat*, 248 Va. 627, 449 S.E.2d 799, 801 (1994)). Accordingly, we look to see whether the contested term, "claim," is ambiguous.

Under the Policy, Fidelity agreed with the Directors

"that if, during the Policy Period, any claims are made against the Directors and Officers for a Wrongful Act and reported to the Company during the Policy Period, [Fidelity] will pay, in accordance with the terms of this policy, on behalf of the Directors and Officers or any of them . . . all Loss which the Directors and Officers shall become Legally obligated to pay."

(Ins. Clause (a)).

Black's Law Dictionary defines "Claim" as "[t]o demand as one's own or as one's right; to assert; to urge; to insist. A cause of action." Black's Law Dictionary 247 (6th Ed.1990). "Demand" is defined as the "assertion of a legal right; a legal obligation asserted in the courts . . . ." *Id.* 429.

 Applying the dictionary definition of "claim" to the language of the Policy makes the term "claim" clear and unambiguous. The Policy states under the heading "Notice of Claims," that if the Directors "receive written or oral notice from any party that it is the intention of such party to hold the Directors and Officers responsible for a specified Wrongful Act," "then any claim which may subsequently be made against the Directors and Officers arising out of such Wrongful Act shall, for the purpose of this policy . . . be treated as a claim made during the Policy Period." (Ins. Clause 6(a)). This language, which distinguishes between notice of claims and claims, strongly indicates that notice of a wrongful act does not rise to the level of a claim. A claim, then, must be something more than notice. A claim is something demanded as of right in a *court.* RTC merely gave the Directors notice that they intended to hold the Directors liable; RTC did not subsequently file a claim in court. The definition of "claim" is clear and unambiguous and the Court will give the word its ordinary meaning and enforce the policy as written. *Atlas Underwriters, Ltd. v. Meredith–Burda, Inc.,* 231 Va., 255, 259, 343 S.E.2d 65, 68 (1986). Accordingly, no "claim" was made.

### B.

 Whether or not a "claim" was asserted, Fidelity is not liable for the Directors' expenses because they were not incurred in the defense of a civil legal action, as required by the Policy. RTC never filed suit in court.

Thus, there were no expenses incurred in defense of a civil legal action, and accordingly, no "Loss" to recover.

The term, "Loss," is defined in the Policy as

"any amount which the Directors and Officers are legally obligated to pay for a claim or claims made against the Directors and Officers for Wrongful Act(s) and shall include only damages, judgements, settlements and costs, charges and expenses . . . incurred in the defense of civil legal actions and appeals therefrom."

(Definition (d)).

The Policy's definition of "Loss" covers claims that result in expenses incurred in the defense of civil legal actions and appeals therefrom. Black's Law Dictionary defines action as "a lawsuit brought in a court; a formal complaint within the jurisdiction of a court of law . . . ." Black's Law Dictionary 28 (6th Ed.1990). Rule 3 of the Federal Rules of Civil Procedure states that a "civil action is commenced by filing a complaint with the court." The fact that the Policy definition mentions "appeals" in connection with civil legal actions strongly implies that the Policy is limited to formal actions *in court.* The term "civil legal action" is clear and unambiguous. RTC never filed an action in court and there was no civil legal action. Accordingly, there were no expenses incurred in defense thereof, and thus, no "Loss" to recover.

### C.

 Fidelity argues that the Policy's insured-versus-insured provision excludes coverage for any claim by RTC as Liberty's receiver. Fidelity argues that even if the RTC did make a "claim" and "loss" was incurred, the insured-versus-insured provision precludes coverage. The Policy states that Fidelity "shall not be liable to make any payment for Loss in connection with any claim made against the Directors and Officers . . . . by, or on behalf of or in the name of [Liberty] or by any Director, Officer or employee of [Liberty] past or present[.]" Policy Exclusion (g).

"Claims against the officers and directors for harm to the corporation are vested in the receiver, who is asserting them on behalf of the corporation." *Womble v. Dixon,* 752 F.2d 80, 82 (4th Cir.1984). Under Virginia law, shareholders do not have standing in their own right to sue a corporation for compensatory damages. *Id.* at 82. Rather, the shareholders must commence a derivative suit for the benefit of the corporation. *Id.* However, the shareholders may do so only if the receiver unreasonably fails to because it is the role of the receiver to sue for the benefit of the corporation. *See id.* It then follows that as Receiver for Liberty, any claim asserted by RTC is a claim "on behalf of" Liberty.

The Maryland Court of Appeals has determined that an insured-versus-insured exclusion that precluded coverage for claims "by" the institution did not preclude coverage for a claim "on behalf of" the institution. *Finci v. American Casualty Co. of Reading, Pa.,* 323 Md. 358, 593 A.2d 1069 (Md.1991). The court found the exclusion ambiguous because it specifically excluded claims "by" the institution, but did not mention claims "on behalf of" it. *Id.* at 1081–82. In contrast, the Policy under consideration specifically excluded coverage for cases "on behalf of" the Bank, and not just "by" the Bank.

Although a receiver represents all parties with an interest in the bank's assets, it does not necessarily follow that the receiver does not act on behalf of the bank. The receiver does "not thereby acquire all causes of action that [other interested parties] individually may have against the officers and directors of the failed bank." *Mt. Hawley Ins. Co. v. Federal Savings & Loan Ins. Corp.,* 695 F.Supp. 469, 483 n. 2 (C.D.Cal.1987). Instead, RTC asserts claims solely on behalf of Liberty. The bank "is only able to bring an action through its receiver; its officers and directors can no longer sue on its behalf. . . . [n]or can shareholders of a bank in receivership sue on behalf of the bank without first demanding that the receiver bring suit." *Id.* at 482 (citations omitted). "The receiver . . . becomes to all intents and purposes the bank—at least he stands in the place of the bank." *Landy v. FDIC,* 486 F.2d 139, 147 (3d Cir.1973) (quoting *O'Connor v. Rhodes,* 79 F.2d 146, 148 (D.C.Cir.1935)). Thus, standing in Liberty's shoes, RTC brought suit *on behalf* of Liberty.

Furthermore, Directors and Officers insurance does not protect the insureds from claims by the corporation itself. "It is difficult to argue that it is within the reasonable expectations of the parties to such an insurance contract that the corporation was paying D & O insurance premiums to protect the directors and officers from the consequences of breaching their duty to the corporation. If coverage for claims made by the corporation against the officers and directors does not fall within the scope of the 'insured's reasonable expectation of coverage,' there is no reason for the insureds to suppose that these same claims would be covered if brought by the receiver for the corporation." *Mt. Hawley,* 695 F.Supp. at 484. Because "[t]hese claims would not be covered under the policy if asserted by [the bank]; it is difficult to argue that they should be covered when asserted on behalf of [the bank] by its receiver." *Id.* at 481. To find otherwise would be an affront to the purpose of the insured-versus-insured exclusion.

### IV.

Based upon the foregoing analysis, Defendant's motion for summary judgment will be granted and Plaintiffs' cross-motion for summary judgment will be denied.